## DAVE ALEXANDER V. THE STATE

### No. 4704. Decided May 1, 1918.

### Rehearing denied June 28, 1918.

**1.—Local Option—Indictment—Term of Court.**

Where the act of the Legislature provided that the court may continue in session for the period of seven weeks, or until the business is disposed of, this authorized the extension of the term of the District Court of the county of the prosecution beyond the end of the seven weeks, and an indictment returned therein during such extension is valid. Davidson, Presiding Judge, dissenting.

**2.—Same—Indictment—Occupation—Selling Intoxicating Liquors—Date of Offense.**

Where defendant contended that the indictment was defective in that no sales are alleged to have been made on or after the day he is alleged to have been engaged in the business of selling intoxicating liquors in local option territory, this was untenable, as the allegation was sufficient that defendant was engaged in said business and occupation, and that at least two specific sales were made within three years, and there was no error in admitting testimony thereunder.

**3.—Same—Agency—Charge of Court—Evidence—Burden of Proof.**

Where, upon trial of pursuing the business of selling intoxicating liquors in local option territory, the defendant offered to show that he reaped no profit from the transaction, but procured the whisky for the State's witness as an accommodation, the same should have been admitted in evidence and the court should have submitted a proper charge thereon. Besides, the charge of the court was error in placing the burden of proof and reasonable doubt upon defendant, with reference to the sales and what constituted pursuing the occupation. Prendergast, Judge, dissenting.

**4.—Same—Evidence—Exhibiting Whisky Bottles.**

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, there was an agreement that the packages containing the liquor were delivered by defendant to the prosecuting witness, the court should not have permitted the county attorney to exhibit one by one sixteen bottles of whisky in the presence of the jury, as this was not necessary to any fact to be proven and prejudiced the defendant in his plea for suspended sentence. Prendergast, Judge, dissenting.

Appeal from the District Court of Hill. Tried below before the Hon. Horton B. Porter.

Appeal from a conviction of pursuing the occupation of selling intoxicating liquors in local option territory; penalty, two years in the penitentiary.

The opinion states the case.

*Collins, Morrow & Morrow,* for appellant.—On question of insufficient indictments because same was not returned at a legal term of the court: Parker v. State, 33 Texas Crim. Rep., 111; Ex parte Parker, 35 id., 12; Wilson v. State, 37 id., 373; Ex parte Juneman, 28 Texas Crim. App.; 486; Brown v. State, 74 Texas Crim. Rep., 356, 169 S. W. Rep., 437; Railway Co. v. Smith, 52 Texas, 185; Garza v. State, 12 Texas Crim. App., 261.

On question of introducing sixteen bottles of whisky: King v. State, 55 Texas Crim. Rep., 146; La Fleur v. State, 59 id., 645; Gillespie v. State, recently reported, 190 S. W. Rep., 146.

On question of refusal of special instructions: McCampbell v. State, 134 S. W. Rep., 345; Burns v. State, 172 S. W. Rep., 981; Warner v. State, 74 Texas Crim. Rep., 209, 167 S. W. Rep., 1109.

On question of burden of proof: Coy v. State, 75 Texas Crim. Rep., 85, 171 S. W. Rep., 221; Fisher v. State, 197 S. E. Rep., 189.

*E. B. Hendricks,* Assistant Attorney General, for the State.

E. C. GAINES, SPECIAL JUDGE.—Appellant was convicted in the District Court of Hill County of pursuing the business of selling intoxicating liquor in local option territory.

The most serious question in the case arises on a motion to quash the indictment on the ground that the bill was returned after the term of court had expired by operation of law. The indictment was returned April 25, 1917. The Act of the Thirty-fourth Legislature, page 218, hereafter referred to as the Act of 1915, reads as follows:

"The terms of the District Court of the Sixty-sixth Judicial District of Texas, comprising the County of Hill, shall be holden in said county as follows: Beginning on the first Mondays in January, March, May, July, September and November of each year; each term of said court may continue in session for a period of seven weeks, or until the business is disposed of, save and except the term beginning annually on the first Monday in July may continue in session for a period of five weeks, or until the disposal of the business."

The March term of said court completed the seventh week on April 21st. The grand jury is an auxiliary body of the District Court and a bill of indictment must be returned into open court. C. C. P., art. 445. Unless the court was in session under lawful authority on April 25th, the bill was not presented into open court or by a body having any legal existence as a grand jury. There are several statutes providing for holding special terms or for extending the regular terms under certain conditions, and all these have been carefully considered, but this was in no sense a special term, and, unless the statute above quoted gives such authority there is but one other statute by which a regular term of court may be extended. That is article 1726 of the Revised Civil Statutes, which provides that: "Whenever any District Court is in the midst of the trial of any case, when the time for the expiration

of the term of said court, as fixed by law, shall arrive, the judge presiding shall have the power and may, if he deems it expedient, extend the term of said court until the conclusion of such pending trial. In such case, the extension of such term shall be shown in the minutes of the court before they are signed. In case of the extension of the term of court as herein provided, no term of court shall fail because thereof in any other county, but the term of court therein may be opened and held, as now provided by law, when the district judge fails to appear at the opening of a term of court."

On April 21st, same being the last day of the seventh week, on the ground that the business could not be disposed of on that day, the court entered an order in the minutes extending the term another week or until Saturday evening, April 28th. Clearly the term could not have. been extended under article 1726; because, under that statute, an extension can only be had when the court "is in the midst of the trial of any cause when the time for the expiration of the term of said court, as fixed by law, shall arrive." It affirmatively appears that the court was not "in the midst of the trial of any cause," when the seven weeks expired. The conditions authorizing an extension not being in existence, there was no authority to extend under that statute. Commonwealth v. McClellan, 121 Mass., 31. This much has been written as to said statute, because counsel for appellant, assuming that the extension was attempted under that statute, have argued well that no such authority could have been derived from that source. However, it does not appear that the court based its authority on said statute. It appears from the order on the minutes and from the remarks of the court in overruling the motion to quash, preserved in the record by defendant's bill of exceptions, that on April 21st the grand jury came into open court and informed the judge that their business was unfinished and upon their request an order was then entered extending the term for another week, during which this indictment was returned and other business transacted. The extension, therefore, clearly appears to have been based on the authority of the Act of 1915. It is true that the extension was evidenced by an order entered on the minutes, as required by article 1726, whereas an order may not have been necessary under the Act of 1915, because in the one the authority of the court could only appear from such order, while in the other it would appear from the law itself, if such authority existed. But the entry of an unnecessary order would not destroy a power existing without the order or bring the extension under another statute requiring an order based on different grounds.

Was the extension authorized by the Act of 1915? The language of that Act is: "Each term of said court may continue in session seven weeks, or until the business is disposed of." Is the effect of this language to limit the term to seven weeks, at all events, and authorize it to adjourn sooner if the business should be disposed of, or does it authorize the court to extend longer than seven weeks if necessary?

Counsel for appellant in a very able brief and oral argument have presented the view that the word "or" being an alternative term does not mean the same as if the word "and" had been used, but is a term of limitation. This view is rendered the more plausible for two reasons: First, because, except in a very few instances, where the Legislature has granted authority to extend terms the usual expression has been: "may continue in session (——) weeks, and until the business is disposed of"; and, second, because the Act of 1905, page 37, prescribing the terms of the District Court in Hill County prior to the present Act, provided that the terms should begin on the same days as the present Act, and that: "Each term of said court shall continue in session until the Saturday before the beginning of the next succeeding term, or until the business is disposed of." It will be observed that the language under construction is the same in each Act and that under the former Act one term would "continue until the Saturday before the beginning of the next succeeding term." Persuasive as these arguments are, they are not conclusive. The term "or" is a disjunctive conjunction and the term "and" is a conjunctive conjunction, defined by the Century Dictionary as "a colorless participle." In the strict sense of precise definition, the one disjoins and the other conjoins; the one is an alternative, and the other is a connective; the one carries an alternative meaning, as you may do this or that, but you can not do both; the other, that you may do both this and that. Such is the restrictive or precise meaning of these terms; however, they are not words of technical meaning and are to receive, in the law, the same meaning they carry in common parlance. In themselves these are empty terms; they have no inherent meaning; they are mere "colorless participles" that derive their meaning or force from what comes before and after. A review of such judicial construction as has been given them is of little value on the present question. Words and Phrases, volume 6, pages 5006 to 5011, inclusive, will show collated a larger number of decisions construing these terms than will be found elsewhere. But all these amount only to this: that these terms derive their force and meaning from the context and connection of the matter in which they are used. Ordinarily, it will not do to reason to a conclusion from the restricted definition of an isolated word, and this is especially true of a term, the meaning of which is as variant as the connections in which it may be employed. It may also be said that a careful search of the decisions has failed to reveal any case in this or any other State where language involving substantially this construction has passed under review. We are left, then, to determine the meaning of this phrase from the whole context of the matter in which it is used and from the use of similar phrases under conditions involving the same construction.

The language of the Act is that: "Each term of said court may continue in session for a period of seven weeks." If we eliminate the following phrase: "or until the business is disposed of," there is no question that the court would still have authority to adjourn before the

end of seven weeks if the business should sooner be disposed of. It follows, then, that the phrase: "or until the business is disposed of" is either surplusage or means that the court may continue longer than seven weeks if necessary to dispose of the business, because without the addition of this phrase the court had undoubted power to continue seven weeks or adjourn sooner. It is the duty of the courts to presume that the Legislature intended to charge all language used by it with a meaning and purpose. This is especially true when the language is an adopted phrase or bears evidence of having been chosen with care or is a phrase of long and frequent usage in the same connection or others involving a similar principle of construction. But by reason of this very principle it is urged with great force by counsel for appellant that the same language was used in the prior Act of 1905, that there was no interval between the terms of court under that Act, and that one term could not overlap another. It is true that the canons of the church have so far become a part of the common law that Sunday is *dies non juridicus,* so that no judicial business may be transacted on that day, unless authorized by statute, except certain ministerial duties. Hanover Fire Insurance Co. v. Shrader & Rogers, 89 Texas, 35; Harper v. State, 43 Texas Crim. Rep., 43; 37 Cyc., 588. It would also seem that the weight of authority supports the proposition that, except in cases provided for by statute, of which this is not one, there may not be two regular terms of the same court in the same district at the same time where there is only one regular judge. Cory v. Richardson, 191 S W. Rep., 568; McVay v. State, 150 S. W. Rep., 125; Tippy v. State, 35 Neb., 368; in re Milligan, 24 Kan., 214. The Legislature is presumed to have had these principles in mind. However, it is not so clear that under the Act of 1905 there was no interval, except Sunday, between the terms. The language of that Act was: "and shall continue in session *until* the Saturday before the beginning of the next succeeding term." The ordinary meaning of the language would imply that the ordinary term would end at midnight on Friday before, so that Saturday would intervene between the terms. However, the decision of this point is not deemed essential to the proposition here involved, and its probable interpretation as it may have been in the mind of the Legislature is alluded to as shedding light on the intent and meaning of the Act of 1905. The Legislature may have intended that the terms should end at midnight Friday and may have regarded Saturday as sufficient for those small unfinished matters that "lag superfluous on the stage" of an expiring term when crowded off by heavy trials. As to whether such language would have the effect of ending the term on Friday night, is a matter of such close reasoning, in the light of the conflicting decisions, that it can not be said such was not the intent of the Legislature, and whether the correct interpretation of their language would give effect to that intent or not is immaterial here, because if such was the legislative intent it would be an additional reason why it should have intended the words "or until the business is disposed of" should

have meant that if necessary the term could extend to include Saturday. Therefore, it can not be assumed that this language in the Act of 1905 could not have been intended to authorize an extension, but if this could be assumed, still, it would not necessarily thus limit the same language in the Act of 1915, because if, apart from that instance, the ordinary effect of the language is such as to allow an extension, but it was impossible in that instance by reason of the immediate opening of the next term, the language would still have the same general meaning and application, only its effect in that particular instance would have been in abeyance by reason of the impossibility of its application, for in such case if the Legislature had used the term "and" instead of "or" it could not have meant more.

In the absence of any direct judicial interpretation of the language under construction, the use of these phrases in substantially the same connection where their meaning is undisputed would seem to afford the best guide as to the legislative intent. A careful review of the legislation prescribing the terms of the District Courts, past and present, will show that when the term is not fixed for a definite time, the prevailing phrase is: "and until the business is disposed of," with an occasional use of the phrase: "or until the business is disposed of." However, there is nothing in the context of the usage of these phrases to indicate they are not convertible phrases and used in precisely the same sense. In the ordinance to the Constitution of 1876, written and adopted with the same ability and care as the Constitution itself, the State was divided into twenty-six judicial districts. In most instances the language was: "and may continue in session —— weeks"; in fourteen: "and may continue in session until the business is disposed of"; and, in one only, being the County of Marion: "and may continue in session eight weeks, or until the business of the term is disposed of." Marion County was then at the end of the circuit and was the only term not immediately followed by another. So that there is more reason to suppose a grant of authority in that instance to extend than to curtail the term.

But the language of the Constitution may well be presumed to have been chosen with more care than that of any other legislation, and while we do not find in that instrument similar language prescribing the terms of courts, we do find there precisely the same form of phraseology prescribing terms of office, and there is no sound reason why the construction of one should not involve a construction of the other. In prescribing the terms of office of the Attorney General, Comptroller, county judge, justice of the peace, and constable, the Constitution provides that each shall hold his office for two years "*and* until his successor shall be elected and qualified"; whereas, in prescribing the term of office for the Governor it provides that: "he shall hold his office for the term of two years, *or* until his successor shall be duly installed"; and in the case of judges of the Supreme Court that they "shall hold their offices for six years, *or* until their successors are elected and

qualified"; and at the close of the same section it is provided that the judges in office at the time the Constitution is adopted "shall continue in office until the expiration of their terms of office under the present Constitution, *and* until their successors are elected and qualified." It is thus made plain that in the language of the organic law of this State, chosen in measured terms, "and" and "or" are used as convertible terms, for it will be observed that the same article limits the term of a supreme judge to six years "or" until his successor is elected and qualified, and that those then holding office shall continue to the expiration of their terms "and" until their successors are elected and qualified. That each would hold over until his successor is elected and qualified is a self-evident proposition now beyond the pale of argument. It will also be observed that in the case of some of the officers above named the language of the Constitution is: *"and* until their successors are elected and qualified," whereas, in the case of others the term "or" is used, and yet that they mean the same thing is beyond all controversy. But, if there could be any doubt on this point it is settled by the Constitution itself in article 6, section 17, wherein it is provided: "All officers within this State shall continue to perform the duties of their offices until their successors shall be elected and qualified." Now if it is perfectly clear, and it is, that the language: "he shall hold his office for a term of two years (or six years as the case may be) *or* until his successor is elected and qualified," means that such officers shall hold over after the expiration of their terms if necessary, it is equally clear that the language: "may continue in session for a period of seven weeks, or until the business is disposed of" means that the court may hold over beyond the seven weeks, if necessary to dispose of the business. Again as illustrating the legislative interpretation, the statute, in prescribing the terms of the supreme judges uses the term "and" until their successors are elected, whereas, as set out above, the Constitution uses the term "or." Of course, in case of conflict in their meaning the Constitution would prevail, but the Legislature is presumed to have meant the same as the Constitution on the same matter, and it amounts to a legislative interpretation that in this form of phraseology "or" means the same thing as "and." Therefore, both the history and example of the use of the language under construction leads inexorably to the conclusion that the phrase "may continue in session for the period of seven weeks, or until the business is disposed of," authorized the extension of the District Court of Hill County beyond the end of the seven weeks and a bill of indictment returned during the extension would not be invalid for this reason.

The indictment alleged that "on or about the 25th day of April, A. D. 1917, and anterior to the presentment of this indictment, Dave Alexander, in Hill County, Texas, did then and there engage in and pursue the occupation and business of selling intoxicating liquor," and then sets out the dates of numerous specific sales. No sales are alleged

to have been made on April 25th. The appellant contends that the indictment is defective in that no sales are alleged to have been made on or after the day he is alleged to be engaged in the business. Sales could not have been alleged after April 25th, because the bill was returned on that day, and there is no apparent reason why the elements of the offense are not well pleaded when the allegation is that he was engaged in the business and at least two specific sales within three years are specified. There was evidence of a sale on the 25th and perhaps one on the 26th of April, and while it is true that subsequent sales are no part of the offense charged and ordinarily would be inadmissible, in view of the testimony of the same witnesses to numerous anterior sales under the same general conditions, it is not believed this testimony was material to the State or prejudicial to the defendant.

The testimony shows that the principal witness for the State was one of those amateur detectives whose travels have been wide and his avocations diversified. He testified that he was "sent out by his headquarters at Dallas to report to the county attorney of Hill County." He seems to have thereafter associated, for his keep, a character similar to himself. They ingratiated themselves into the confidence of appellant, who was a negro boot-black in a barbership in Hillsboro, and induced him to procure whisky for them from the town of West on divers and sundry occasions as alleged in the indictment, for which they gave him money either before or after the delivery of the whisky Appellant did not deny procuring the whisky and taking the money for it, but when he was testifying in his own behalf his counsel sought to elicit from him testimony to the effect that he did not have any interest in or reap any profit from the whisky but only got the same as an accommodation to the State's witnesses. This testimony was objected to by the State on the ground that it was "hearsay" and excluded by the court, for what reason we are not advised; certainly not on the ground that it was hearsay. This was original and direct testimony going to the gist of the offense. It was practically the only question on the facts. If appellant was a mere agent or obtaining the whisky as an accommodation, it would not constitute a sale. Campbell v. State, 37 Texas Crim. Rep., 572; Driver v. State, 48 Texas Crim. Rep., 20; Evans v. State, 55 Texas Crim. Rep., 549; Robinson v. State, 81 Texas Crim. Rep., 448. The gist of the offense is that of engaging in the business of *selling* intoxicating liquor. The question of the weight or probable truth of the testimony was not for the court. The jury may have preferred to have believed a negro boot-black rather than an amateur detective who encourages and participates with an ignorant negro in the commission of an offense in order that he may furnish evidence thereof for a reward. The testimony should have been admitted, and its exclusion by the court is error highly prejudicial to appellant. Appellant also complains of the failure of the court to charge on this theory, but it appears that a requested charge covering substantially this issue was given and this would cure the omission in the main charge. Ap-

pellant complains of the following paragraph in the charge of the court: "If you find from the testimony that defendant did not engage in the business of selling intoxicating liquor as alleged in the indictment and did not make two sales of intoxicating liquor within three years next before the 25th day of April, or if from the testimony you have a reasonable doubt that he made two sales within said time, then you will find the defendant not guilty." This charge is erroneous in two respects. It tends to put the burden of proof on appellant and applies the principle of reasonable doubt only to the issue of two sales. The law is that he must have engaged in the business and must have made at least two sales within three years. He is entitled to the benefit of the reasonable doubt on both issues. If the jury had a reasonable doubt as to whether he was engaged in the business it would be as much their duty to acquit as if they had such doubt on the issue of the two sales, and in case of such doubt on either issue they should acquit. Mizell v. State, 59 Texas Crim. Rep., 226, 128 S. W. Rep., 125; Robinson v. State, 81 Texas Crim. Rep., 448, 196 S. W. Rep., 186.

In the progress of the trial the State was about to exhibit the whisky in the presence of the jury for the purpose of refreshing the memory of the prosecuting witness, to identify the packages purchased and to prove it was whisky. Appellant thereupon admitted that: "Where it is alleged and proved that transactions were had with the prosecuting witnesses where the defendant delivered packages to said witnesses that the same were whisky and that said packages were the identical packages delivered by defendant to said prosecuting witness and then in the possession of the county attorney." Notwithstanding this admission in open court, the court permitted the county attorney to exhibit one by one sixteen bottles of whisky in the presence of the jury. The nature of the employment of this witness and the short time that had elapsed since the events on which he testified were such that this testimony was clearly not necessary to refresh his memory. This admission established every other material and admissible fact that could have been established by the exhibition of said whisky. Its exhibition was, therefore, not necessary to any fact to be proven. But the psychological effect of such matters under all the circumstances must have been highly prejudicial to the appellant. This is intensified by the fact that appellant presented a plea for suspended sentence and the evidence was such that this would ordinarily have been granted. This is a right of appellant to be guarded as any other right involved in his trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, PRESIDING JUDGE.—I agree to reversal but do not concur on first proposition in opinion.

MORROW, JUDGE, not sitting.

PRENDERGAST, Judge (concurring in part and dissenting in part).—When the original opinion was handed down I did not write my views. I now do so.

I concur with Special Judge Gaines in holding that the extension of the term of court at which the indictment herein was preferred was legal and valid.

The Act of 1905, page 37, creating Hill County a separate district, fixed the term of court to be held on the first Mondays in January, etc., of each year, and prescribed: "Each term of said court *shall continue* in session until the Saturday before the beginning of the next succeeding term, or until all the business is disposed of." Doubtless the judge of that court and the officers concluded, as the Act said, "*shall continue*," etc., that it was mandatory and required the court to continue in session as stated, notwithstanding it had no business at all to transact for some time before the expiration of the term; and that the last words quoted, "or until all the business is disposed of," gave the court power to extend the term beyond that fixed, if it had business on hand necessary to be disposed of. The Act of 1915, page 218, amending that of 1905, fixed the term of court on the first Mondays of January, etc., of each year. Then it said: "Each term of said court *may continue* in session for a period of seven weeks, or until the business is disposed of." Thereby expressly authorizing the court to adjourn even before the seven weeks expired, and thereby removed the peremptory feature of the previous act requiring the court—"*shall. continue,*" etc. But at the same time giving the court power and authority to continue the court even longer than the seven weeks if the undisposed of business required it. I think there can be no question of the intent of the Legislature in the matter and that the extension of the term by the judge in this instance was unquestionably a legal term of court during the time of extension.

I concur with Judge Gaines in holding the indictment when attacked in another instance as stated, valid.

I do not concur, but dissent from Judge Gaines' opinion wherein he comments unfavorably upon what he says was the State's principal witness, as an "amateur detective" and that he "associated, for his keep, a character similar to himself." I think his criticism of these witnesses is in no way called for by the testimony or anything that occurred in the trial.

Neither do I concur in that portion of Judge Gaines' opinion wherein he, at least by implication, lauds the appellant in this language: "The jury may have preferred to believe a negro boot-black rather than an amateur detective who encourages and participates with an ignorant negro in the commission of an offense in order that he may furnish evidence thereof for a reward." I commend and approve the employment of detectives by the officers to aid them in ferreting out the violations of our liquor laws. I regard them as a necessity and instead of denouncing them, I commend them.

From Judge Gaines' opinion one would be led to think that the whole testimony of the State was that of one "amateur detective" and another "character similar." But such is not the case. Mr. Carroll, who is the one reproachfully designated as an "amateur detective," was following a legitimate and praiseworthy business, that of a detective to ferret out crime. Before that he had followed honorable employment and no dishonorable at any time. He testified to separate and distinct purchases of intoxicating liquor from appellant, one on each of these dates in 1917: February 28th, March 2nd, 4th, 9th, 20th, 21st and April 25th. Mr. Franks, the good deputy sheriff of Hill County, testified that he saw Mr. Carroll make the purchases of liquor from appellant on March 2nd and 5th, and tells such a state of circumstances as to show that he also saw the sale on March 9th.

Mr. Currey, who must be the witness referred to as "a character similar to" Carroll, testified that he made separate and distinct purchases of intoxicating liquors from appellant on March 4th, 5th and 7th.

Another witness, Mr. Sealey, who escapes being designated as an "amateur detective" or "a character similar," testified that he bought intoxicating liquor from appellant on March 21st, April 20th, 21st and 25th.

Earl Pryor, who escaped odious designation, testified that he saw Sealey and Carroll buy liquor from appellant on March 23rd.

Mr. Eugene Pryor, another escaped witness, swore that he bought intoxicating liquor from appellant the latter part of April, and he was present when Sealey, while with Pryor, bought whisky from appellant on April 25th.

So that the testimony of the State did not depend upon the testimony of the "amateur detective" or "a character similar." Neither did the detectives, or either of them, induce, nor were they instrumental in having, appellant to commit the crime. What they did was to detect him in the commission of the crime.

The prosecution and conviction was for pursuing the business of selling intoxicating liquor in prohibition territory—bootlegging of the worst type. Judge Ramsey in Fitch v. State, 58 Texas Crim. Rep., 366, designated accurately, so far as it goes, a bootlegger of this character, thus: "He was an unfair competitor of the man engaged in the sale of liquor under the restraints and safeguards of law. He was doing business in defiance of law. The youth received no protection at his hands as the law provides in case of the saloon keeper. He gave no bond to keep an orderly house. He might, as he did, ply his business in all hours of the day (and of the night). His place became the refuge for the depraved, a breeding ground of crime, a plague spot, the refuge and shelter of indiscriminate outlawry, and in every way worse and more destructive than the 'earthquake's shock or the ocean's storm.' It was this man, as it was a man of like mold in the blind tiger case, that the law sought to reach. It sought not so much to punish him for the sale as to prevent the sale, break up his place of business and

drive him out of business. It sought not so much to punish him as to protect society by the imposition of the felony punishment for his continued existence."

Of the two characters, this one just designated by Judge Ramsey, or the "amateur detective," it seems to me the latter would be infinitely preferable to the former.

I do not concur in, but express my dissent from, that portion of Judge Gaines' opinion wherein he held in effect that because of appellant's admission that the bottles which the State's witnesses claimed he had sold to them, contained whisky, that it was reversible error to permit the State to introduce in evidence these bottles of whisky before the jury. The law on the subject is as laid down by Mr. Wharton in 1 Wharton's Crim. Ev., sec. 24c, as follows: "It is error to exclude relevant evidence tending to prove or disprove the issues, although the facts are admitted. Notwithstanding the admission, the prosecution has a right to prove the charge by competent evidence in support of it. Facts when admitted, frequently lose their probative force, and are frequently admitted for this reason alone. Through loose admissions as to such facts, both judge and jury are apt to be confused as to what is and what is not admitted, and are consequently often misled."

Article 1 of our Code of Criminal Procedure expressly declares that the object of the code was intended to embrace rules applicable to the prevention and prosecution of offenses against the laws of the State, and that it seeks, among other things: "1. To adopt measures for preventing the commission of crime. 2. To exclude the offender from all hope of escape. 3. To bring to the investigation of each offense on the trial of the case evidence tending to produce conviction or acquittal." And thereby commands the courts to permit the introduction of all legitimate evidence that would convict or tend to have this effect. The very reason appellant had for trying to prevent the introduction of these bottles of whisky which he had sold to these respective witnesses was to escape conviction and punishment for his crime, because the introduction of this testimony did "bring to the investigation" of this offense evidence tending to produce his conviction.

Upon the whole, it occurs to me that this case should not have been reversed but affirmed.

DAVIDSON, PRESIDING JUDGE (dissenting).—I concur in the reversal, but am of opinion there is error in holding that the indictment was legally found. There seems to be no question as to the facts bearing upon this matter. The court adjourned by the terms of the statute on the 21st day of April. The bill of indictment was returned on the 25th day of April. The court makes this statement in the bill of exceptions:

"The court overrules the defendant's motion to quash, believing that the law is enunciated in the case of the State v. Mizell, 59 Texas Crim. Rep., 226, as reported in 128 S. W. Rep., on pages 125 to 128, inclusive, and upon the issue of the court's authority to extend the term, the court

states as a fact, that on the 21st day of April, A. D. 1917, being the seventh week of the March-April term of this court, the grand jury being then in session and having come into open court and stated to the court that they had not finished the business in hand and could not do so that day and requested the court to extend the term of the court to another week in order that they might thereby be enabled to finish the matters then under investigation, the court granting said request by an order duly entered upon the minutes of the District Court in volume S, page 102, by authority vested in the court by Senate Bill No. 375, described in chapter 139 of the general laws of the State of Texas of the Acts of the Thirty-fourth Legislature, . . . same being as follows:

" 'The term of the District Court in the Sixty-sixth Judicial District of Texas, comprising the County of Hill, shall be holden in said County of Hill, as follows: Beginning on the first Mondays in January, March, May, July, September and November of each year. Each term of said court may continue in session for a period of seven weeks, or until the business is disposed of, save and except the term beginning annually on the first Monday in July may continue in session for the period of five weeks, or until the disposal of the business.' "

The Act of the Legislature referred to is not fully quoted by the judge in his qualification. Section 1 of the Act is copied by the trial judge. Section 2, however, was not and reads as follows:

"The near approach of the end of the session and the inconvenience resulting from unequal terms of court in said district, creates an emergency and an imperative public necessity requiring the constitutional rule which requires that bills be read on three several days be suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

It will be observed from reading this Act of the Legislature that the question of the extension of the term of court under article 1726 of the Revised Civil Statutes has no application. This is conceded by the majority opinion. The evidence and the bill excludes the idea that there was a pending trial before the court at the time the order was entered. The only reason for the extension was that the grand jury requested it that they might be enabled to dispose of some matters they had under investigation. Massachusetts has a similar statute to article 1726, supra, which provides that "whenever any criminal case shall be on trial at the end of any term, such term may be continued until such case is finished." The Supreme Court of that State held that it applied only to cases actually on trial at the end of a term, and not to a case which, at some previous time during the term, had been begun and suspended, and not actually in progress of trial at the end of the term. That court said: "Whenever any criminal case shall be on trial at the end of any term, such term may be continued until such case is finished, and the jurors sitting in such case may be presiding justice to serve until the same is concluded." "We are of opinion that the words 'on trial' in this statute are to be taken in their literal meaning, and that

the case must be actually on trial before the court and jury at the end of the term. That is, if in any stage of the proceedings of a trial actually in progress at the time, between the empaneling of the jury and the rendition of a verdict, the end of the term is reached, and the trial can not be concluded in the ordinary course of business during the term as established by law, in such case an adjournment may be had. The statute does not apply to cases in which at some previous time during the term trials have been begun, and suspended for other reasons, and which at the close of the term are not actually in progress of trial before the jury." What was said by the Supreme Court of Massachusetts is applicable here to article 1726, supra. There are other statutes with reference to the continuation of terms of court, and other means of holding court besides regular terms. The trial courts may call such terms for the disposition of business when deemed necessary. Those have no application here. This was not an attempt to call a special term of the court, but is only extension call. There are statutory provisions with reference to the continuance of courts, towit: statutes creating courts and fixing the terms thereof providing that such courts may continue a certain length of time *and* until the business is finished. That is an amplification and not a restriction. Under such statutes the term to which such amplification relates may continue without adjourning or order of the court and until the business before the court is disposed of. That rule does not here apply. It will be noticed that by the terms of the present statute the court is limited to seven weeks, *or* until the disposition of the business. That is evidently a limitation upon the power of the court to extend the term. Its purpose was to authorize the court to hold seven weeks if necessary, and if not, then the court should not continue the seven weeks. This was not intended to grant power of extension, but was a limitation upon the power of extension. If under the statute under consideration the business has been disposed of before the end of the seven weeks, it would be adjourned, and it would be the duty of the judge as soon as the business was disposed of, although the seven weeks had not been economized, to adjourn it. There are obvious reasons why this construction should be placed upon it. One of these is stated in the statute itself, towit: To avoid "the inconvenience resulting from unequal terms of court in said district." There is another reason underlying this limitation; that is, to avoid the expense incident to holding court, the inconvenience to litigants and jurors, court costs, and expenses incident to holding court. So it would seem to be the correct conclusion that the District Court in Hill County, which adjourned by law on the 21st day of April, was not permitted to last or continue longer than that date. The legislative intent was that the court should continue seven weeks *if necessary,* and if not necessary it was to terminate at or before the end of the seven weeks. It could not continue beyond that date. There is nothing to indicate an "extension." The word "or" carries with it the idea that such was the legislative purpose and this construction is correct. The

word *"or"* is disjunctive and implies the alternative. The statute being in the alternative, it could not last longer than the stipulated seven weeks. *"Or"* sure means "unless."

Applying this rule to the statute under discussion, it will be found by comparing it with other statutes already mentioned that where the word "and" is used in one class and "or" in the other, it shows an intentional purpose on the part of the Legislature to amplify the length of terms in one, and to limit and restrict duration in the other. And the reason given in the statute itself fixing the term in Hill County shows that it was the purpose of the legislative mind to place a limitation on the length of such terms as specified in the Act. The reason is stated in the bill itself and carries its purpose. If the term could continue till the business was disposed of, the order of extension was not authorized. The idea of "extension" or even legal prolongation is excluded. The trial judge recognized this as correct and held it did not continue until the business was disposed of by entering the *extension* order. It was only by such order of extension that the jury returned the indictment. The extension was unauthorized. The term closed April 21st. The indictment was returned on the 25th of the month, a date when there was no legal or authorized term of court.

I am of the opinion that the order of the court extending the time, under the facts set out in the bill of exceptions as qualified by the judge, shows clearly that the extension of the term from the 21st of April beyond the end of the seven weeks was void. The court had no authority to extend the term, and that the term could not be lengthened by operation of law until the business was disposed of. When the night of the 21st of April came at 12 o'clock, the seven weeks term ended, and the court by law terminated.

I respectfully dissent and believe the judgment should be reversed and the prosecution dismissed for want of a legal indictment.