ANDY WOOTEN v. THE STATE.

No. 11530.   Delivered April 25, 1928.
Rehearing denied January 30, 1929.

The opinion states the case.

*Bledsoe & Crenshaw* of Lubbock, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for transporting intoxicating liquor; punishment one year in the penitentiary.

Officers were observing an automobile parked north and west of the public square in Crosbyton on the night in question. They went

down an alley toward the back of the John K. Fullingim hotel and stopped near a little building. They saw some one coming in the alley toward them. He had something in his hand that looked like a jar and when he saw the officers he turned and ran north and back of the servant's house behind the hotel, and when he got to the edge of the building he turned east, the officers pursuing him, and when some ten or twelve steps further the officers overtook the man, who proved to be appellant. An officer testified that just before catching appellant he saw him throw something to one side. At this time appellant fell down. The officer said he looked at what appellant had thrown down and it was a square glass jar. He arrested appellant, walked back a short distance and told the other officer to get the jar, which the latter did. The officer testified as follows: "I was never out of sight of the jar after I saw him throw it down. I have had that jar ever since . . . I tasted the contents of this jar and I can tell the jury that it was whisky." He said that at the time he told the other officer, who was Mr. Lott, to get the jar same was something like twelve or fourteen steps from him, and he could plainly see the jar from where he was standing, and kept his eyes on it until Lott went and picked it up. The jar was a half gallon square jar. At the time one Crosby was in a car not far away. Mr. Lott testified also for the State and said that the car mentioned was parked south of the northwest corner of the hotel fence, and that as he was going with Mr. Reed, the other officer, in pursuit of appellant he saw Charles Crosby get out of his car and come toward witness. Witness said he had had some trouble with Crosby before and he pulled out his pistol when Crosby came within fifteen or twenty feet of him, and told Crosby not to come on him. It appears from the testimony that about the time officer Reed overtook appellant, that Mr. Reed fired his pistol in the air. Officer Lott testified that about the time Reed fired, if he did so, witness heard a "clash" and he thought the clash was a jar broken in that car. He said that the hearing of the clash was the first thing that he knew about anybody being in said car, that he had not seen anyone in it up to that time, and that when he heard this clash he stopped and turned facing the car and that it was at this time that Crosby got out of the car. It was a moonlight night and both Mr. Reed and Mr. Lott testified that the jar in question was plainly visible quite a distance away. The jar appeared to be practically full, and was identified positively on the stand as the one seen in possession of appellant. In behalf of the defense Mr. Parrish testified that on the night in question he

was in his car at the corner of said hotel, and that he heard a shot or two and saw a man running east, and in about ten seconds saw two other men running east coming toward his car. He said the first man was fifteen or twenty steps ahead of the other two and that he disappeared, but before disappearing he saw said man throw something out into the street. He did not see this man again after he disappeared and did not recognize him. He saw one of the other men fall and his pursuer come up and take hold of the one who had fallen, at which time witness stepped on his starter and left. He said he did not see anything in the hands of the man who fell, and did not think he had any jar or glass or anything. He said he "checked out pretty quick." Appellant introduced Crosby who said that he was sitting in his Ford roadster, that appellant had been in the car with him, and they had been talking of making a trip to Kansas City, and appellant got out of the car and started away. He then heard some shooting and looked up and officer Lott had a pistol on him. He said appellant did not have a jar of whisky in his hand when he got out of the car, nor did he have a jar of whisky while he was in the car with witness. He further testified that he and officer Lott had had a great deal of trouble, and when the officer pulled the gun on him he told witness that if he got out of the car he would blow his brains out. He further testified that he had been with appellant since sundown on that day and had not seen him have any jar of whisky. On cross-examination of this witness he denied absolutely the presence of any whisky in his car and said he did not break any jar in that car, and that there was not any broken glass in the car, and that the officers did not look in the car. Said it was around 11 or 12 o'clock at night. Appellant testified substantially as did Crosby and said that when he got out of Crosby's car and started toward the front of the hotel he heard a shot and looked around and saw some one and fell down, and that officer Reed took hold of him and brought him back to the car. He denied throwing anything out in the street and said he did not have any whisky or any kind of liquid in his hand, and that he had had no jar of whisky in his possession that night. He said on cross-examination that he took a drink that night in the hotel of his own whisky, which he had in the hotel; that he took the last drink and threw the bottle down there in the hotel. He said he was in a room of the hotel with a party at the time and that they were having a Dutch lunch. He said he did not see any jars of any kind in Crosby's car and knew nothing of any jar having been broken in that car, and did not see any

jar or broken glass in said car. He admitted that he fell down two or three times while on the way from the hotel to the sheriff's office that night, but attributed this to the fact that he had hurt his knee cap when he fell at the time he was arrested. He denied this arising from being drunk. The State in its rebuttal called officer Reed who said that when he came back by Crosby's car he saw broken glass on the floor boards and on the fender of the car. Mr. Lott was also recalled and said that he saw broken glass in the car on that night, and also that the floor of the car was wet with something. He saw this after appellant was brought to jail and witness went back to the car and saw the glass and the wet floor.

Four bills of exception appear in the record. We confess we do not quite comprehend the first bill of exceptions which sets out that defendant offered to prove by witness Lott that he did not have any warrant "to arrest the defendant" and that said witness and the sheriff did not exhibit "to the witness any warrant he had to arrest the defendant at said time." It is set out that the State objected to proof of the fact that the sheriff did not exhibit any warrant "to the witness to arrest defendant," on the ground that same was irrelevant and immaterial. It is further set out that if objection had not been made the witness would have testified that the sheriff did not exhibit to him any warrant for the arrest of the defendant. We see no reason for the exhibition of any warrant. If the testimony of the officers is true, appellant was transporting intoxicating liquor within the presence and view of the officers and was therefore liable to arrest without warrant, said transportation being a felony.

The next bill complains of the fact that defendant on cross-examination asked witness Lott if he had a warrant for the arrest of Mr. Crosby, and that the State's objection to this was sustained. It is stated that the witness, if permitted, would have answered in the negative. We perceive no error in the ruling. The witness testified that he merely told Crosby not to come on him, and apparently did this on the ground that he and Crosby had had trouble, and that when he saw Crosby the latter was getting out of his car and starting toward witness.

Another bill complains of the refusal of the court to instruct the jury not to consider the finding of broken glass and the wet floor in the car of Mr. Crosby, the ground of the objection seeming to be that appellant was not present at the time witness saw the broken glass and where the liquid had been spilled. The witness Crosby and appellant both swore that they were together in said car just before appellant got out and started along where he was pursued and ar-

rested by the officer and found in possession of a jar of whisky. We would deem it entirely proper for the State to prove that in the car out of which appellant said he had just gotten at the time he was charged with transporting liquor, liquor was found.

There is a bill complaining of misconduct of the jury, and that they received other testimony, the complaint appearing to be that the jury, after retiring to deliberate upon this case, were permitted to view the situation and scene of this occurrence, the arrest and pursuit, it being the contention of appellant that by viewing the location of the trees and their relation to the buildings, and being permitted to look at the ground where the arrest occurred, this would affect and influence the jury in passing upon the testimony of the witnesses and in arriving at a conclusion as to what occurred. We have carefully read the testimony heard by the court for and against this contention. It appears that the city hotel in Crosbyton is the one at which the jurors took their meals. This hotel is in the second block from the court house. If we correctly understand the testimony of the officer in charge of the jury, he said they took the jury along the same way that they always took jurors, and that they went direct to the hotel and into the side door on the street going east and west. He says there was nothing to prevent the jury from seeing the location and position and number of the trees on the north side of the hotel and that they appeared just as they are all the time. The officer said that one of the jurors said he wanted to see how far these trees went back. The relevance of the remark does not appear. They took all their meals at the city hotel, and went there apparently four or five times during the trial. The officer testified that he took the jury to the hotel to get their meals and that he had no other purpose in taking them there save this. Only two of the jurors testified. Their testimony is somewhat lengthy and has been carefully examined by us. We find nothing in same indicating the acquisition of any information material to this case improperly by the jury, or their wrongful use or discussion of anything, if such there was, seen by them while on the jury, and do not believe the learned trial judge erred in overruling the motion for new trial. We perceive no testimony of more than one transportation of liquor.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, Judge.—Appellant complains of the omission of some details in the statement of the facts set out in our original

opinion in so far as it might affect his contention that a charge on circumstantial evidence was demanded. We have again examined the evidence, both that given on direct and cross-examination, having in mind the particular matters called to our attention in the motion for rehearing. We see no necessity for going into lengthy details. We still are not able to agree with appellant that the case is one of circumstantial evidence.

As we understand the record the evidence about the broken glass and wet place in Crosby's car came into the case in the following manner; neither of the state's witnesses, Reed nor Lott, testified to anything about that matter on direct examination. They saw appellant get out of Crosby's car. On cross-examination of Lott appellant himself developed that as Lott passed the Crosby car the crash of glass or a jar breaking in the car was heard. Both appellant and Crosby admitted that they had been sitting in the car but denied that appellant left the car with a bottle of whiskey, and also denied that any whiskey had been in the car. On rebuttal Reed testified that when he came back by the car with appellant, and while Lott and Crosby were still standing near the car witness saw the door of the car open and saw glass on the floor boards and fender. Lott also testified on rebuttal that about ten or fifteen minutes after appellant was taken to the court house witness went back to the Crosby car and saw broken glass in the car and a wet place on the floor. Even though the car may have been moved in the meantime it would not under the circumstances render inadmissible the evidence given by Lott.

Appellant calls attention to the fact that we did not discuss his criticism of the fifth paragraph of the charge in which the jury was told if they found that appellant "did not" transport the liquor in question or "if they had a reasonable doubt thereof" they would acquit. Appellant's objection was that said instruction as worded shifted the burden of proof and was on the weight of the evidence. It may be conceded that the language of the charge was not well chosen and is subject to criticism as indicated by the opinions in Landers v. State, 63 S. W. 557; Rice v. State, 103 S. W. 1156; Sain v. State, 148 S. W. 566; Alexander v. State, 204 S. W. 644. It will be observed however that in none of those cases was a reversal predicated alone upon the charge criticized. In the Sain case Judge Davidson says: "Taking this charge as given, in the light of the qualification at the end of the quoted charge, with reference to reasonable doubt, the jury may not have been misled, but it is

advisable and better not to use this character of language in instructing the jury." In the present case the jury was told that they must believe from the evidence beyond a reasonable doubt that appellant did transport the whiskey, and also that appellant was presumed to be innocent until his guilt was established and if they entertained a reasonable doubt as to his guilt they should acquit. The jury understood quite as well as the trial judge and counsel that the sole issue was whether appellant transported the liquor. We are not able to conceive how it was possible for the jury to have been confused or misled by the charge complained of. Art. 666 C. C. P. provides that a judgment shall not be reversed unless the error complained of was calculated to injure the rights of appellant.

The motion for rehearing is overruled.

*Overruled.*