# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00205-CV

**Ace Cash Express, Inc., Appellant**

**v.**

**Jeffrey D. Silverman and Morris Silverman, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. GN300997, HONORABLE JOHN K. DEITZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case involves construction of a contract, specifically, interpretation of the word "and." Appellant Ace Cash Express, Inc. appeals an order granting appellees, Jeffrey D. Silverman and Morris Silverman, summary judgment in a breach of contract action. The contract required the "seller and shareholder" to indemnify the purchaser, Ace Cash Express, for losses resulting from misrepresentations or breaches of warranties made by the "seller and shareholder." Ace Cash Express sued the Silvermans claiming a breach of a seller warranty. The district court held that "seller and shareholder" indemnified only against breaches of warranties or representations made by both "seller and shareholder" and that the indemnity provision did not apply to breaches of

warranties or representations made solely by "seller." We will affirm the district court's summary judgment.

**Procedural and Factual Background**

This action arises out of an asset purchase agreement ("agreement") by which Ace Cash Express purchased various assets relating to the check-cashing business of Valley Check Cashiers, Inc., the seller. The seller and the Silvermans, who were the seller's shareholders, each made certain representations and warranties as part of the agreement. Ace Cash Express alleged that the seller breached these representations and warranties and sought indemnification from both seller and the Silvermans amounting to $2.4 million.

Article two of the agreement lists twenty-seven representations and warranties made to Ace Cash Express by the seller. Section 2.8(a) reads, "Except as otherwise noted thereon, Seller has good, merchantable title to all of the Assets, including but not limited to those properties and assets described on Exhibit A." Section 2.8(b) reads, in part, "The assets are owned free and clear of any lien, claim, or encumbrance." Section 2.12 represents that the real property leases that seller was transferring to Ace Cash Express were "valid, binding, subsisting, and enforceable."

Among the assets purchased by Ace Cash Express under this agreement was the seller's interest in a lease allowing for the operation of check-cashing locations in eleven Handy Andy grocery stores in San Antonio. Shortly after the closing of the sale, however, the largest secured creditor of the owner of the Handy Andy stores foreclosed upon the owner's assets and sent an eviction notice informing the seller that Ace Cash Express could no longer operate check-cashing locations within the stores. Ace Cash Express brought suit seeking the right to continue operating

2

the check-cashing locations in Bexar County district court. The district court ruled that the Handy Andy lease rights were invalid and ordered Ace Cash Express to vacate the stores.

Ace Cash Express then sought indemnification under section 5.1 of the agreement and, having been rebuked by the seller and by the Silvermans, brought the suit that is the source of the instant controversy. Section 5.1 of the agreement reads,

> "Seller and Shareholder shall jointly and severally indemnify and hold Purchaser . . . harmless from and against any and all losses . . . asserted against Purchaser . . . resulting from or arising out of or in connection with (a) any material misrepresentation or breach by Seller and Shareholder of any warranty, agreement, or covenant contained in this Agreement or any other document executed, delivered or furnished by Seller and Shareholder in connection herewith . . . ."

The district court accepted the Silvermans' position that the meaning of "seller and shareholder" in section 5.1 of the agreement is that the indemnity provision applies only to a breach of a representation or warranty made by both the seller and the Silvermans as opposed to a representation made by only one of them. Reading the word "and" strictly in the conjunctive results in an indemnity requirement only for breaches of joint warranties. Because the representations in article two of the agreement that were breached were made on behalf of the seller, but not the shareholders, under the district court's interpretation no indemnity is owed by the Silvermans under section 5.1 of the agreement.

Having held that the indemnity provision of section 5.1 did not apply to the seller's representations and warranties allegedly breached, the district court granted summary judgment to the Silvermans on the claims asserted against them as the shareholders and severed the surviving

3

claims against seller, Valley Check Cashiers, Inc., making the summary judgment final and appealable.

## Standard of Review

A trial court's decision to grant or deny a motion for summary judgment is a question of law, and thus we review that decision *de novo*. *See Reagan Nat'l. Adver. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 493 (Tex. App.—Austin 2002, pet. denied). The movant must show that (1) there is no genuine issue of material fact and (2) it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The construction and legal effect of a contract are determined by the court as a matter of law, in the absence of an issue of fact. *American Mfrs. Mut. Ins. Co. v. Schaefer*, 47 Tex. Sup. Ct. J. 40, 2003 Tex. LEXIS 472 (Oct. 17, 2003); *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Where, as here, the issues raised are based upon undisputed facts, the reviewing court may determine the questions presented as a matter of law. *McCreight v. City of Cleburne*, 940 S.W.2d 285, 288 (Tex. App.—Waco 1997, writ denied).

## Analysis

Ace Cash Express urges that the "and" in "seller and shareholder" should be construed in section 5.1 of the agreement as having a meaning similar to "or" so that a breach of a warranty by either party triggers the indemnity provision with respect to both. Ace Cash Express argues that only this interpretation gives meaning to the intent of the parties and to the twenty-seven warranties in article two of the agreement.

4

Citing *Alexander v. State*, appellant urges that the terms "and" and "or" are "mere colorless particles that derive their meaning or force from what comes before or after." 204 S.W. 644, 646 (Tex. Crim. App. 1918). *Alexander*, however, involves statutory interpretation, and the Court of Criminal Appeals rationalized its approach based upon prior judicial interpretation of the usage of the "and" and "or" in specific statutes, including usage of the terms in the state constitution. *Id.* Indeed, Ace Cash Express correctly identifies a number of Texas cases in which "and" and "or" have been loosely construed when dealing with statutes or rules. *See, e.g.*, *Witherspoon v. Jernigan*, 76 S.W. 445, 447 (Tex. 1903) (construing statute); *Blocher v. McArthur*, 303 S.W.2d 529, 531 (Tex. Civ. App.—Austin 1957, writ ref'd n.r.e.) (construing rule of civil procedure). The current case is distinguishable in that we are asked to interpret a contract written by the parties themselves. Judicial interpretation of a statute, particularly when based upon past interpretation, is an entirely different endeavor than that of construing a contract.

The fundamental rules of construction dictate that in construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393; *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). No single provision taken alone will be given controlling

5

effect; rather, all the provisions must be considered with reference to the whole instrument. *Coker*, 650 S.W.2d at 393.

Normally, the words "and" and "or" are not interchangeable terms but are used for purposes entirely different, the former being strictly of a conjunctive nature and the latter being of a disjunctive nature. *American Nat'l. Ins. Co. v. Wilson State Bank*, 480 S.W.2d 296, 300 (Tex. Civ. App.—Amarillo 1972, no writ).

> "Interpreting 'and' to mean 'or' is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user, and where not to do so would render the meaning ambiguous, or result in an absurdity or would be tantamount to a refusal to correct a mistake." *Board of Ins. Comm'rs v. Guardian Life Ins. Co.*, 180 S.W.2d 906, 908 (Tex. 1944).

The language used by the parties in a contract should be accorded its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985); *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966). Our primary goal in interpreting a contract is to give effect to the intent of the parties as expressed in the agreement itself, not from the parties' present interpretation. *First State Bank v. Keilman*, 851 S.W.2d 914, 922 (Tex. App.—Austin 1993, writ denied).

Accordingly, we must first determine whether declining to interpret the agreement as Ace Cash Express urges would render the meaning ambiguous or result in an absurdity. Whether a contract is ambiguous is a question of law for the court to decide. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 424 (Tex. 2000). If the written instrument is so worded that it can be given a

6

certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393; *Universal C.I.T. Credit Corp.,* 243 S.W.2d at 157; *Old Am. County Mut. Fire Ins. Co. v. Sanchez*, 81 S.W.3d 452, 456 (Tex. App.—Austin 2002, no pet.). A contract is ambiguous when, after the application of established rules of construction, its meaning remains uncertain and doubtful or is reasonably susceptible to more than one meaning. *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999); *Coker*, 650 S.W.2d at 393; *Skelly Oil Co. v. Archer*, 356 S.W.2d 774, 778 (Tex. 1962). An ambiguity does not arise simply because the parties offer conflicting interpretations. *Kelley-Coppedge*, 980 S.W.2d at 465; *see also Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex. 1997). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 393; *see also Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980).

Interpreting "and" in section 5.1 of the agreement in its traditional, conjunctive meaning would not create an ambiguity. It is undisputed that if so interpreted, the indemnity provision does not apply to breaches of individual warranties. This is a "clear and definite" meaning derived from the plain language of the agreement. Further, the word "and" has a conjunctive meaning, and in light of the many uses of "Seller or Shareholder" and "Shareholder and/or Seller" in the agreement, it seems that the parties understood the meanings of each at the time the contract was executed. Considering the entire agreement, including the parties' frequent use of "and/or" and "or," we conclude that the parties intended to use "and" to signify the conjunctive.

7

Ace Cash Express urges that we consider summary judgment evidence in the form of an affidavit suggesting that the agreement would have never been signed if the indemnity provision only applied to joint warranties. Consistent with the parol evidence rule, we cannot consider extrinsic evidence of the intent of the parties unless the intent cannot be derived from within the four corners of the contract itself. *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995); *Litton v. Hanley*, 823 S.W.2d 428, 431 (Tex. App.—Houston [1st Dist.] 1992, no pet.); *Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex.*, 208 F.3d 475, 485 (5th Cir. 2000); *In re Conte*, 206 F.3d 536, 538 (5th Cir. 2000).

We therefore conclude that the agreement and the intent of the parties as indicated by the express terms of the agreement, when construed according to the rules of contract construction, were not ambiguous as a matter of law. Rather, the unambiguous intent of the parties was to impose joint and several liability under the indemnity provision on both the seller and the Silvermans for breaches of representations or warranties made by both the seller and by the Silvermans, but not to do so for breach of warranties made solely by the seller.

Where the intent of the parties is clearly expressed within the four corners of the contract, we may depart from the meaning of the terms chosen by the parties if such a departure is necessary in order to avoid an absurd result. *Board of Ins. Comm'rs*, 180 S.W.2d at 908. Such a situation arises where reading "and" as a conjunctive would render the provision meaningless or would create a paradox that could not have been the substance of the bargain.

In *Aerospatiale Helicopter Corp. v. Universal Health Services., Inc.*, the term "and" was construed to mean "or" where a conjunctive reading of "and" would have resulted in liability

8

only when a loss occurred both while a helicopter was "in use or operation" *and* during installation or removal of equipment. 778 S.W.2d 492, 501 (Tex. App.—Dallas 1989, writ denied). Because flying a helicopter and installing equipment rarely occur simultaneously, giving "and" its conjunctive meaning in *Aerospatiale* would have rendered the provision meaningless and defied common sense. *Id.*

In this case, however, giving "and" its conjunctive meaning in section 5.1 of the agreement clearly results in a joint indemnity by the seller and by the Silvermans for any breach of a joint warranty. Under this construction, regardless of the assets of each, both parties are jointly and severally responsible for holding Ace Cash Express harmless from losses or expenses resulting from their joint breach. Although the express language of the provision does not impose liability on the Silvermans for breaches of individual warranties of the seller and vice-versa, it is not absurd to conclude that the parties intended joint liability only for breaches of joint warranties.

Ace Cash Express further argues that there are only warranties made by the seller as an individual under article 2 of the agreement and that therefore the indemnity clause is meaningless if construed as applying only to joint warranties. Although the literal conjunctive interpretation of "and" does not provide for indemnity coverage for article 2 warranties, it does cover other significant joint representations such as section 4.2, where the seller and the Silvermans jointly agree to neither compete with Ace Cash Express nor solicit its employees, and section 4.8, where both the seller and the Silvermans agree not to impair the business.

Ace Cash Express urges that section 5.1 is simply a reciprocal indemnity from the seller and the Silvermans to Ace Cash Express and was intended to be symmetrical to section 5.2.

9

Section 5.2 provides an indemnity from Ace Cash Express to the seller and the Silvermans for losses resulting from "any misrepresentation or breach by [p]urchaser of any warranty, agreement or covenant contained in this [a]greement." Ace Cash Express argues that 5.2 is indicative of the symmetry intended in section 5.1 and that section 5.1 should thus be interpreted to give effect to that symmetry. This would result in the section 5.1 indemnity being construed to apply to breaches of the seller's article 2 warranties just as the plain language of section 5.2 indemnity indicates that it applies to the Ace Cash Express's article 3 warranties.

It is true that section 5.2 does apply to Ace Cash Express's warranties in article 3 of the agreement and section 5.1, when "and" is given a conjunctive meaning, does not in turn apply to the seller's article 2 warranties. We cannot, however, conclude that this was not an intentional and reasonable distinction. Article 2 contains a long list of substantive warranties relating to employee-benefit plans, leases, litigation, condition of the assets, taxes, intellectual property, etc., any one of which might have involved substantial risk and liability. Article 3, on the other hand, simply indicates that Ace Cash Express has the authority to enter into the transaction, has complied with applicable laws, and is not in conflict with other agreements that Ace Cash Express has executed. It is not unreasonable to suggest that the varying scope of the warranties might have led the parties to contract for varying liability for their breach and, accordingly, reading it as such does not lead to an absurd result.

Additionally, we note authority indicating that, when applying an indemnity provision after the intent of the parties has been determined, the indemnitor is entitled to have the provision

10

strictly construed in its favor, thereby preventing liability from being extended beyond the terms of the agreement. *See Ohio Oil Co. v. Smith*, 365 S.W.2d 621, 627 (Tex. 1963), *overruled on other grounds, Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987); *Sun Oil Co. v. Renshaw Well Serv., Inc.*, 571 S.W.2d 64, 68 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.); *Hudson v. Hinton*, 435 S.W.2d 211, 214 (Tex. Civ. App.—Dallas 1968, no writ).

In this case, strict construction of section 5.1 of the agreement in favor of the indemnitor, the Silvermans, results in the adoption of the meaning that limits the scope of the indemnity provision. This also results in the attribution of a conjunctive meaning to "and" in "seller and shareholder" in section 5.1 and, accordingly, no liability for the Silvermans for breaches of seller's article 2 warranties.

**Conclusion**

We conclude that the term "seller and shareholder" in section 5.1 of the agreement means that the indemnity provision applies only to breach of a representation or warranty made by both the seller and by the Silvermans. This is the literal meaning of the express language of the agreement. We are able to assign a definite and certain meaning to the words chosen by the parties and, accordingly, we construe the contract as a matter of law. *Coker*, 650 S.W.2d at 393; *Universal C.I.T. Credit Corp.*, 243 S.W.2d at 157; *Old Am. County Mut. Fire Ins. Co.*, 81 S.W.3d at 456. Because the facts are undisputed and the only question presented is the construction of the agreement, there exists no issue of material fact and summary judgment is appropriate. *Nixon*, 690

11

S.W.2d at 548-49; *McCreight*, 940 S.W.2d at 288. Accordingly, the summary judgment of the district court is affirmed.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: January 23, 2004

12