**Bill ECHOLS et al., Appellants,**

v.

**YEATES DEVELOPMENT CO., Appellee.**

**No. 17940.**

Court of Civil Appeals of Texas, Fort Worth.

March 16, 1978.

Rehearing Denied May 11, 1978.

278

Ross L. Elliott, Breckenridge, Creighton & Cleveland, Mineral Wells, Turner, Seaberry & Warford, and Virgil Seaberry, Eastland, for appellants.

Thompson & Cook, and W. G. Thompson, Breckenridge, Jennings, Montgomery, Dies & Turner, and Frank Jennings, Graham, for appellee.

## OPINION

HUGHES, Justice.

Yeates Development Co., a Texas corporation, sued Betty Whitt; Janet Meador; Carol Russell; First National Bank of Abilene, Guardian of the Estate of Beulah Watson, a person of unsound mind; Bill

Echols; Jolene Echols; Martha Housenfluck; W. L. Blakney; William Conlee; Harriett Lippman; Jerome Lippman; and Milton Lippman in trespass to try title to mineral estates under two tracts of land in Stephens County. Alternately, in count two, Yeates sued for a judgment adjudging oil and gas leases to Yeates from the defendants to be "still valid and remain in full force and effect." Subject to the first two counts, Yeates filed a suit for partition of the mineral estate in question.

A jury trial was had and an instructed verdict granted for Yeates against Harriett Lippman, Jerome Lippman, Milton Lippman, W. L. Blakney and William Conlee. A partial instructed verdict was granted to defendants, Betty Whitt, Janet Meador and Carol Russell. A jury verdict was returned as to all other matters in controversy. Both Yeates and the remaining defendants moved for judgment on the verdict. The trial court granted Yeates' motion and declared the mineral leases in question (Bill Echols, Jolene Echols, Martha Housenfluck, Beulah Watson, the three Lippmans, W. L. Blakney, William Conlee) to be in full force and effect with Yeates the owner of the 7/8ths working interest (subject to a 1/16th override in Bill Echols.)

The judgment also ordered that Yeates have a constructive trust "on any oil, gas and mineral leases which the defendant Bill Echols has acquired . . . on the lands described . . . ."

Defendants appealed.

We affirm.

The defendants own undivided mineral interests in the two tracts of land here involved. Yeates is the record owner of oil and gas leases covering such mineral interests. (Some original defendants and other mineral owners have either settled with Yeates or were not involved in the case.)

Defendants' leases were all dated Nov. 1, 1972, with a primary term of one year and provision for shut-in royalty in lieu of production. The Martha Housenfluck lease was different from the others in that it was for a ten year primary term with no provision for annual delay rentals, with provision for the same amount for shut-in royalty as delay rentals. In the trial court she sought to have the lease reformed to a one-year lease, but was denied.

In March 1973, Yeates deepened an old oil well on the property by re-entry and completed a gas well. It was shut in and no gas or oil was produced or sold from same. No other wells were drilled.

Yeates was offered 30¢ per m. c. f. at completion of the well by Lone Star Gas Company, but Yeates decided to attempt to get a better offer. He told Echols that he was attempting to get a better price for the gas and finally in April 1974, Yeates contracted the gas to Lone Star for 80¢ with provision to re-negotiate price. The Lippmans, Blakney and Conlee re-affirmed the lease to Yeates, asked to be dismissed from the suit and were. Echols and Housenfluck admitted in their summation to this count that they were the only appellants still contesting, the others having otherwise worked out their problems with Yeates.

When Yeates attempted to move gas production equipment on the property on August 26, 1974, he found a lock on the gate and was denied access. About this time Yeates tendered shut-in gas royalty to some, but not all, mineral owners. More had been tendered before August, 1974.

In the time from November 1973 to August 1974, Yeates bought an easement to lay a gas pipeline from the well to a Lone Star line; bought pipe for the line; bought a compressor for the well; incurred title expenses on the property; but did no work on the well itself.

During the same time, Echols, who had accepted a 1/16th override to the 7/8ths working interest from Yeates (as well as 30 acres of the minerals bought for him by Yeates for his work), negotiated new leases from Martha Housenfluck, Beulah Watson, the three Lippmans, W. L. Blakney and William Conlee, and paid them a $10.00 per acre bonus. Echols told them Yeates had re-entered the well, gotten a small amount of oil but was not doing anything with it.

The jury found:

1. Echols was in a fiduciary relationship to Yeates in regard to the acquisition of leases and operations thereon.

2. Echols abused the fiduciary relationship by seeking to acquire leases for himself on the land.

3. Echols acted as agent in the leasing for his ex-wife, Jolene, Martha Housenfluck, Beulah Watson, the three Lippmans, W. L. Blakney and William Conlee.

4. Yeates continued to conduct operations and negotiations for the production and marketing of gas from the well between Nov. 1, 1973 and Aug. 26, 1974.

5. Echols had knowledge of such Yeates activity.

6. By his actions, Echols led Yeates to believe the oil and gas leases here involved to be in full force and effect.

7. Yeates relied on such conduct of Echols.

8. Yeates would not have continued to conduct operations and negotiations but for such reliance.

9. The agreement between Echols and Housenfluck was for a one-year lease term.

10. Failure to alter the Echols—Housenfluck lease form for a one-year term was not a mutual mistake.

14. Yeates enhanced the value of the oil, gas and mineral estate in such land by its re-entry, completing and equipping a well.

15. Yeates enhanced the value by $856,000.00.

The appellants, in Points of Error Nos. One and Two say that the trial court erred in holding that their leases to Yeates "are still in force and effect." In their brief they contend that the answers to Special Issues 6 through 9 are immaterial because, under the undisputed facts, the lease had terminated on November 1, 1973, and could not be revived. *Freeman v. Magnolia Petroleum Co.*, 141 Tex. 274, 171 S.W.2d 339 (1943) was cited for the proposition that

where there was a shut-in well, not producing, with a provision for shut-in royalty, which was not paid, such lease failed as a matter of law and could not be revived by an attempt to perform four months after the contract said performance should have begun.

▆▆▆ Yeates pled an estoppel theory based on Echols' silence and inaction until August 26, 1974, when Yeates found the gate locked. Appellants correctly cited *Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783 (1941) for the proposition that mere silence by the lessors in permitting the improvement and development of the property after the expiration of a lease will not raise an estoppel to reactivate the lease. The case does not state that there may never be an estoppel, however, because that case also said that any extension of the lease would have to be in writing *unless the doctrine of estoppel applies.*" 155 S.W.2d at 784–785 (emphasis ours). Estoppel was applied in *Mitchell v. Simms*, 63 S.W.2d 371 (Tex.Comm'n App.1933, holding approved), where tendering of delay rentals was made during the primary term, and the court treated acceptance of rentals tendered late as affirmative conduct creating an estoppel which had the practical effect of reviving the lease. In the instant case, Bill Echols, agent of the lessors, allowed Yeates to spend time and money in attempting to get more for the gas and to get the same to market. The jury also found that Echols occupied a fiduciary relationship to Yeates and abused it. Echols challenges these findings in his argument. Under the evidence in this case, we hold that Echols, as fiduciary and agent, had a duty to speak out. This is so, particularly in view of his conferences with Yeates on continuing negotiations. Also it is to be noted that Echols: (1) provided abstracts for division orders; (2) saw Yeates putting equipment on the lease; and (3) let Yeates clear the way for pipeline to market the gas for months after the well was shut in. Where there is a duty to speak out, silence results in estoppel. *Burnett v. Atteberry*, 105 Tex. 119, 145 S.W. 582 (1912).

■ We overrule Points of Error Nos. One and Two because we think the answers to Special Issues Nos. 6 through 8 are material, and we find sufficient evidence to support the jury's answers to them.

■ We overrule Point of Error No. Four which complains that the jury's answers to Special Issues 1 and 2 will not support the judgment. Echols' argument thereunder also contends that there is no evidence to support the answers. The constructive trust adjudged by the court was justified by the evidence, it being necessary only to show, as here, a relationship in which Yeates trusted Echols with his confidences and plans of getting better prices for the gas. In the instant case there was this situation and more to justify the jury's finding on Issues 1 and 2 of fiduciary relationship between Echols and Yeates and abuse thereof by Echols. Existence of the fiduciary relationship was a question of fact properly found by the jury in this case. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557 (1962); *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944).

We also overrule Point of Error No. Three which complained of the trial court's not reforming the Housenfluck lease from ten years to one year. The jury found that the agreement between the two appellants, Echols and Housenfluck, was for a one-year lease but that failure to alter the lease form was not a mutual mistake.

In their brief appellants argue both that there was no evidence to support the finding to Special Issue No. 10 and that the evidence was insufficient to support it. Appellants argue that no one contradicted the testimony by Echols and Mrs. Housenfluck that they intended the primary term to be for one year.

■ The burden of proving a mutual mistake was on the appellants. *Sun Oil Co. v. Bennett*, 125 Tex. 540, 84 S.W.2d 447 (Tex.Comm'n App.1935, opinion adopted). The jury found they failed in proof. We hold that the jury's answer should be sustained.

■ Even if a mutual mistake had been established, there could be no reformation because there was no showing that Yeates, who was not a party to the lease, was not a bona fide purchaser of the ten-year lease. *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62 (1959). We also agree with Yeates that even a reformed-to-one-year Housenfluck lease would still be in force and effect because no shut-in gas royalty was required under its terms.

Affirmed.