John WILLIAMS, Petitioner,

v.

Robert H. STANSBURY et al., Respondents.

No. C–1502.

Supreme Court of Texas.

April 6, 1983.

H. Averil Sweitzer, Dallas, for petitioner.

James A. Baker and Steven B. Strange, Ungerman, Hill, Ungerman, Angrist, Dolginoff, Teofan & Vickers, Richard G. Dafoe, Francis Thayer, Dallas, for respondents.

CAMPBELL, Justice.

This is an action on a promissory note.[1] Williams purchased a promissory note without knowledge that it had been subjected to a suit for garnishment. The question is whether Williams must intervene in the garnishment proceeding in order to protect his rights in the note. The trial court held Williams was estopped to recover the proceeds of the note which had been paid to the garnishor. The court of appeals affirmed. 634 S.W.2d 924 (Tex.App.1982). Our per curiam opinion dated November 10, 1982, is withdrawn. We reform the judgment of the court of appeals and, as reformed, affirm.

---

1. Williams also sued certain corporations involved in a garnishment of the note, alleging tortious interference, conversion, and conspiracy. The trial court rendered judgment that Williams take nothing from the defendant corporations. The trial court also assessed attorney's fees against Williams for failure to complete discovery. We find no error in this part of the judgment.

On January 15, 1970, Stansbury bought a laundromat from Harriet Clements and gave Clements his promissory note as payment. Shortly after the sale, a judgment-creditor of Clements served a writ of garnishment on Stansbury to reach the debt Stansbury owed Clements. The court in the garnishment case directed Stansbury to pay each monthly payment into the registry of the court.

Over a year later, on May 8, 1971, Clements sold Stansbury's note to Williams. On May 10, Williams notified Stansbury that he held the note and that future installments should be paid to him. Stansbury's attorney wrote Williams requesting proof that he owned the note and informing him that payments were being made into the court in the garnishment case. On May 25, Williams sent Stansbury a copy of the note and threatened legal action if payments were not made to him. Finally, on August 30, Williams advised Stansbury that the note had been turned over to an attorney for collection and demanded immediate payment of the balance of the note.

Two years passed and Stansbury heard nothing further from Williams. On August 9, 1973, Stansbury and the garnishor reached a settlement and the garnishment case was dismissed. The order dismissing the garnishment case directed the district clerk to return to Stansbury the $8252.85 he had paid into the court. Stansbury then disbursed this money under his agreement with the garnishor. Williams was not a party to the garnishment case and did not receive any money under the settlement agreement.

On April 28, 1975, about two years after the order dismissing the garnishment case and about forty-four months after his last contact with Stansbury, Williams sued Stansbury on the note. Stansbury contended Williams was not a holder in due course because he knew the note was in default when he purchased it because of the garnishment case. Stansbury also contended Williams was estopped to recover on the note because he did not act to protect his interest until almost four years after learning of the garnishment case.

The jury found Williams did not know the note was in default when he purchased it. The jury, however, found that: Williams knew of the garnishment suit on May 25, 1971; Williams by his conduct or silence led Stansbury to believe he would not pursue his rights with respect to the note; Stansbury relied on the conduct or silence of Williams when he settled the garnishment case; and enforcement of the note would result in a financial loss to Stansbury. On the basis of these findings, the lower courts held that Williams is estopped to collect, and Stansbury is entitled to deduct, the amount paid into the registry of the court during the garnishment proceeding. We disagree.

The promissory note signed by Stansbury is in negotiable form. See Tex.Bus. & Com. Code Ann. § 3.104. The note was endorsed by Clements and delivered to Williams, making Williams a holder of the note. Tex. Bus. & Com.Code Ann. § 1.201(20). A holder of a negotiable instrument is subject to all valid claims to the instrument on the part of any person. Tex.Bus. & Com.Code Ann. § 3.306. If, however, Williams has established himself as a holder in due course, he will defeat the garnishor's prior claims.

A holder in due course is a holder who takes a negotiable instrument for value in good faith and without notice that it is overdue or that it has been dishonored or paid or that a defense or claim against the instrument exists on the part of any person. Tex.Bus. & Com.Code Ann. § 3.302(a). The holder of a promissory note is presumed to be a holder in due course absent evidence to the contrary. *Favors v. Yaffe,* 605 S.W.2d 342 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.); *Couch v. Babb,* 423 S.W.2d 464 (Tex.Civ.App.—Beaumont 1968, writ ref'd n.r.e.). Williams made a prima facie showing that he was a holder in due course when he produced the negotiable note properly endorsed to him. Stansbury's only attack on Williams' status as a holder in due course is that Williams knew the note was in default when he purchased it

because of the garnishment proceeding. The jury, however, found that Williams did not know the debt represented by the note had been garnished when he purchased the note.

 With certain exceptions not material to the present case, a holder in due course takes an instrument free from all legal and equitable claims by any person to the instrument. Tex.Bus. & Com.Code Ann. § 3.305. The adverse claims, against which a holder in due course is protected, are not limited to claims of ownership, but embrace rights acquired through legal process such as garnishment. 2 R. Anderson, Uniform Commercial Code § 3–305:42 (2d Ed.1971). We hold the garnishment of a debt represented by a promissory note does not affect the rights of a holder in due course, even though the garnishment is prior to the negotiation.[2]

 The court of appeals has disregarded Williams' rights as a holder in due course by concluding that Williams' silence or inaction estopped him from collecting those payments made into court during the garnishment proceeding. In *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex.1979), we said that "estoppel by silence arises where a person is under a duty to another to speak, but refrains from doing so and thereby leads the other to act in reliance on a mistaken understanding of the facts." Williams fulfilled any duty to speak when he notified Stansbury he had purchased the note and demanded payment. Williams did not acquiesce in the garnishment. When advised of the garnishment case, Williams accelerated the note and demanded its payment in full. As a holder in due course, Williams had the right to demand that Stansbury pay the note according to its terms. Williams was under no obligation to intervene in the garnishment case. Rather, it was Stansbury's responsibility to bring into the garnishment case all claimants to the note in order to protect himself. *Thompson v. Fulton Bag & Cotton Mills*, 155 Tex. 365, 286 S.W.2d 411 (1956). The judgment of the court of appeals is reformed to award Williams the principal and interest accruing from May 8, 1971. As reformed, the judgment of the court of appeals is affirmed.

---

2. The general rule is once a writ of garnishment has been served, a judgment-debtor may not by assignment dispose of the funds in the hands of the garnishee. *Gause v. Cone*, 73 Tex. 239, 11 S.W. 162, 163 (1889); *Intercontinental Terminals Co. v. Hollywood Marine, Inc.*, 630 S.W.2d 861, 863 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). An exception to this rule arises when the underlying debt in the hands of the garnishee has been suspended by the issuance of a negotiable instrument that has not fully matured. The reasons for this exception are explained in 1 E. Cook, Creditors' Rights in Texas § 3.37(a) (2d ed. 1981) at 133:

> Such favored treatment is given to the holder in due course not simply to protect good-faith purchase but also, and even more importantly, to serve the greater need of certainty in commercial dealings. Granting the right to cut off various defenses to a holder in due course gives the purchaser of commercial paper confidence that it will be enforceable and, therefore, worth the amount that it purports to be worth.